# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

DFINITY FOUNDATION, Switzerland-based not-for-profit organization,

Plaintiff,

v.

THE NEW YORK TIMES COMPANY, a New York corporation; ANDREW ROSS SORKIN, an individual; EPHRAT LIVNI, an individual; ARKHAM INTELLIGENCE, INC, a Delaware corporation; MIGUEL MOREL, an individual; JONAH BENNETT, an individual; ZACHARY LERANGIS, an individual; KEEGAN MCNAMARA, an individual; NICK LONGO, an individual; and JOHN DOES 1-10,

Defendants.

Case No. 1:22-cv-05418 (LAK)

**ORAL ARGUMENT REQUESTED**

# PLAINTIFF DFINITY FOUNDATION'S MEMORANDUM OF LAW IN OPPOSITION TO NICK LONGO'S MOTION TO DISMISS

TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

BACKGROUND ....................................................................................................4

ARGUMENT .......................................................................................................5

    I.    Legal Standard ........................................................................................5

    II.   The Court Has Specific Personal Jurisdiction Over Longo ...........................6

        A.  The New York Long-Arm Statute Confers Jurisdiction Over Longo ...................6

            1.   Longo Transacts Business Within the State ........................................7

            2.   Longo Committed Tortious Acts Within the State ...............................8

            3.   Longo Fails to Rebut the Applicability of CPLR §§ 302(a)(1) and 302(a)(2) .....................................................................................9

        B.  Exercising Jurisdiction Over Longo Comports with the Due Process Clause.......10

        C.  In the Alternative, Dfinity Requests Jurisdictional Discovery.............................13

    III.  Dfinity States Claims for Defamation and Violation of Section 349 Against Longo ..................................................................................................16

CONCLUSION.....................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amimon Inc. v. Shenzhen Hollyland Tech. Co.*,
   No. 20-cv-9170, 2021 WL 5605258 (S.D.N.Y. Nov. 30, 2021) ........................................................ 12

*Atl. Recording Corp. v. Project Playlist, Inc.*,
   603 F. Supp. 2d 690 (S.D.N.Y. 2009) ........................................................................................... 1

*Biro v. Conde Nast*,
   No. 11-cv-4442, 2012 WL 326770 (S.D.N.Y. Aug. 10, 2012) ........................................................ 7

*Centrifugal Force, Inc. v. Softnet Commc'ns, Inc.*,
   No. 08-cv-5463, 2009 WL 1059647 (S.D.N.Y. Apr. 17, 2009) ...................................................... 12

*Chloe v. Queen Bee of Beverly Hills, LLC*,
   616 F.3d 158 (2d Cir. 2010) ................................................................................................. 6, 8

*Dorchester Fin. Securities, Inc. v. Banco BRJ, S.A.*,
   722 F.3d 81 (2d Cir. 2013) ................................................................................................ 2, 5, 6

*Eades v. Kennedy, PC Law Offices*,
   799 F.3d 161 (2d Cir. 2015) ..................................................................................................... 10

*Emerald Asset Advisors, LLC v. Schaffer*,
   895 F. Supp. 2d 418 (E.D.N.Y. 2012) ........................................................................................ 9

*Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*,
   141 S. Ct. 1017 (2021) .............................................................................................................. 10

*Goodyear Dunlop Tires Operations, SA v. Brown*,
   564 U.S. 915, 131 S. Ct. 2846 (2011) ....................................................................................... 10

*Gordon v. Invisible Children, Inc.*,
   No. 14-cv-41222, 2015 WL 567919 (S.D.N.Y. Sept. 24, 2015) ..................................................... 1

*Int'l Diamond Importers, Inc. v. Oriental Gemco (N.Y.), Inc.*,
   64 F. Supp. 3d 494 (S.D.N.Y. 2014) .......................................................................................... 9

*Khalil v Fox Corp.*,
   No. 21-cv-10248, 2022 WL 447622 (S.D.N.Y. Sept. 26, 2022) ................................................... 15

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) .................................................................................................... 1

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   732 F.3d 161 (2d Cir. 2013) ...................................................................................................... 7

*Lyman Commerce Sols., Inc. v. Lung,*
   No. 12-cv-4398, 2014 WL 476307 (S.D.N.Y. Feb. 6, 2014) ............................................ 11

*Oakley v. Dolan,*
   833 F. App'x 896 (2d Cir. 2020) ..................................................................................... 1

*Palin v. New York Times Co.,*
   940 F.3d 804 (2d Cir. 2019) ............................................................................ 2, 15, 16

*Piotrowicz v. Techtronic Indus. N. Am., Inc.,*
   No. 19-cv-11522, 2021 WL 1721709 (S.D.N.Y. Apr. 30, 2021) ............................. 13, 14

*Pray v. Oughtred & Harrison (Shipping) Ltd.,*
   No. 98-cv-0599, 1999 WL 173591 (S.D.N.Y. Mar. 26, 1999) ...................................... 7

*Prejean v. Infosys Ltd.,*
   No. 20-cv-8018, 2022 WL 4620154 (S.D.N.Y. Sept. 3, 2022) ........................... 6, 9, 11, 13

*Restis v. Am. Coal. Against Nuclear Iran, Inc.,*
   53 F. Supp. 3d 705 (S.D.N.Y. 2014) .............................................................................. 15

*Retail Software Servs., Inc. v. Lashlee,*
   854 F.2d 18 (2d Cir. 1988) ........................................................................................ 7, 8

*In re Sledziekjowski,*
   No. 13-22050, 2016 WL 6155929 (Bankr. S.D.N.Y. Oct. 21, 2016) ........................ 13, 16

*Symmetra Pty Ltd. v. Hum. Facets, LLC,*
   No. 12-cv-8857, 2013 WL 2896876 (S.D.N.Y. June 13, 2013) ...................................... 7

*Wiwa v. Royal Dutch Petroleum Co.,*
   226 F.3d 88 (2d Cir. 2000) ............................................................................................ 11

**Statutes and Other Authorities**

Fed. R. Civ. P. 8 .................................................................................................................. 16

Fed. R. Civ. P. 12(b)(2) .......................................................................................... 1, 2, 5, 6, 9

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 1, 3, 6, 15

Fed. R. Civ. P. 12(h) .............................................................................................................. 4

N.Y. C.P.L.R. § 301(a)(1) ......................................................................................... 2, 3, 7, 9

N.Y. C.P.L.R. § 301(a)(2) ...................................................................................... 2, 3, 7, 8, 9

N.Y. Gen. Bus. Law § 349 ........................................................................... 3, 7, 8, 9, 12, 15, 16

U.S. Constitution Due Process Clause ............................................................................. 6, 10

Plaintiff Dfinity Foundation ("Dfinity") submits this opposition to the motion to dismiss and accompanying declaration filed by defendant Nick Longo ("Longo"), pursuant to Rule 12(b)(2) and 12(b)(6).  Dkt. 75 ("Longo Mot.") & Dkt. 76 ("Longo Decl.").

## PRELIMINARY STATEMENT

In publicly-available recorded video footage incorporated by reference in the Complaint, Longo admits his complicity in Arkham Intelligence, Inc.'s ("Arkham") report regarding Dfinity, the defamatory publication at the center of this lawsuit (the "Report").  He states:

- "The ICP thing just made sense to research at the time."

- "It was in *The New York Times*."

- "Nobody had really thought to look at that, so **_we_ published it**."

- "And it was a good opportunity to get some attention."

- "When **_we_ say** insiders sold all the tokens, it's not that **_we_** have perfect evidence that guarantees that's the case, but it's very confident.  There's a high degree of confidence."

- "It's just **_our_ best effort**.  **_We_ say this** in the disclosures that this isn't investment advice, it's not proof of anything in a legal sense, but it's **_our_ best information that _we_ can pull together**."[1]

Longo admits in his Declaration that he is the individual featured in these recorded

---

[1] *See* https://crypto-leaks.info/case-no-2 (last accessed Oct. 25, 2022), cited in Compl. ¶¶ 13-14, 31 & nn.1-2, 14 (emphases added).

Websites relied upon in a Complaint are deemed incorporated by reference and are proper to consider on a motion to dismiss.  *See Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 694 n.3 (S.D.N.Y. 2009); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("The rationale of the 'incorporated by reference' doctrine applies with equal force to internet pages as it does to printed material."); *see also Oakley v. Dolan*, 833 F. App'x 896, 889 (2d Cir. 2020) (relying on video footage "incorporated by reference" into complaint); *Gordon v. Invisible Children, Inc.*, No. 14-cv-41222, 2015 WL 567919, at *1 n.1 (S.D.N.Y. Sept. 24, 2015) (relying on YouTube video linked in complaint).

videos.  Longo Decl. ¶ 16.  He also makes no argument that the videos were doctored in any way, thereby admitting that he, in fact, made the statements in the videos.  *Id.*  Rather than refute the authenticity of the videos, he contends that he "was recorded without [his] knowledge or consent" and that he purportedly made these statements "based upon information that came into [his] possession after [he] began [his] employment at Arkham in October 2021."  *Id.*

But Mr. Longo's contentions that he did not mean what he literally said—*i.e.*, that he, along with Arkham and the other Arkham Defendants,[2] "published" the defamatory Report of and concerning Dfinity to "get some attention" for Arkham—are found nowhere in the Complaint and cannot be adjudicated on a Rule 12(b)(2) or 12(b)(6) motion.  *Palin v. New York Times Co.*, 940 F.3d 804, 810 (2d Cir. 2019); *Dorchester Fin. Securities, Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013).  Rather, the meaning of his statements is an issue for the trier of fact after document discovery and deposition cross-examination of Longo and all other relevant witnesses under oath.  And even ignoring that Longo's motion to dismiss is predicated on assertions which directly contradict admissions pled and incorporated by reference in the Complaint, the purported fact that Longo did not know he was being recorded only lends support to the veracity of his recorded statements.  Based on Longo's recorded statements and the allegations in the Complaint regarding Longo, there is no basis at this stage for his thinly-disguised attempt at a merits dismissal.

The Court has specific personal jurisdiction over Longo under CPLR § 302(a)(1) because he transacts business in New York as the Executive Assistant to the CEO of a New York-headquartered company, whose sole purpose during the relevant time period was to defame

---

[2] The "Arkham Defendants" are Arkham, Miguel Morel, Jonah Bennett, Zachary Lerangis, Keegan McNamara, and Nick Longo.  The "Times Defendants" are The New York Times Company, Andrew Ross Sorkin, and Ephrat Livni.

Dfinity.  As he admits on video, he also co-authored and otherwise participated in the procurement, composition, and publication of the Report, which was published from New York and further provided by the Arkham Defendants to, and disseminated in, *The New York Times*, a New York publication.  Additionally, the Court has specific jurisdiction over Longo under CPLR § 302(a)(2) because he committed a violation of New York General Business Law Section 349 ("Section 349") in New York, through Arkham's New York conduct.

Because Dfinity's claims are for defamation and violation of Section 349 arising from the Report and Arkham's related defamatory video (the "Video," distinct from the Crypto Leaks videos summarized above), Dfinity's claims arise from Longo's acts under CPLR §§ 302(a)(1) and (a)(2), thus satisfying the requirements under the New York long-arm statute and the Constitutional Due Process "minimum contacts" analysis.  Moreover, exercising jurisdiction over Longo would be "reasonable" under the Due Process analysis because he works for a New York-based company, has competent New York counsel, and his proposed alternative—identical, parallel litigation in Wisconsin—would waste judicial resources and risk inconsistent results.  In the alternative, jurisdictional discovery is warranted because of the many questions raised by Longo's Declaration when considered together with his statements in the Crypto Leaks videos and evidence that Arkham is headquartered in New York.

Finally, contrary to Longo's Rule 12(b)(6) arguments, the Complaint contains sufficient allegations to state claims against him for defamation and under Section 349.  Compl. ¶¶ 1, 13-14, 25, 31, 52, 56 & nn. 1-2, 4.

For the reasons set forth herein, and also in Dfinity's Opposition to the three prior motions to dismiss filed in this action (Dkt. 78) ("Omnibus Opposition"), which is incorporated herein by reference, Longo's motion should be denied.

## **BACKGROUND**

Although Dfinity incorporates herein the factual recitation of the Omnibus Opposition

(Dkt. 78 at 7-17), Dfinity summarizes additional facts below as relevant to Longo's Motion:

Longo is the Executive Assistant to defendant Miguel Morel, the CEO of Arkham.

Longo Decl. ¶ 2.  Arkham is a company registered to do business in New York, with its principal

place of business also in New York.  Compl. ¶ 23.  Arkham's filings with the California

Secretary of State indicate that its "Principal Address" and "Mailing Address" are: "16 E 18th

Street, Floor 9, New York, NY 10003."  Fua Decl., Ex. A.  The New York State Division of

Corporations' website classifies Arkham as a "foreign business corporation" that is "active" in

New York.  Fua Decl., Ex. B.  The same website provides the name and New York address of

Arkham's New York agent for service of process.  *Id.*  Dfinity successfully served Arkham at this

New York address.  Fua Decl., Ex. C.  Arkham's LinkedIn Profile lists "New York, NY" as the

company's "Headquarters."  Fua Decl., Ex. D.  Arkham's company website currently displays

five job listings, each stating that the job's location is "New York, New York."  Fua Decl., Ex. E.

These postings are for significant, full-time positions of: Software Engineer, Data Engineer,

Head of Marketing, Brand & Social Media Manager, and Sales Associate.  *Id.*  Arkham, Morel,

and Arkham employee Zachary Lerangis filed a joint motion to dismiss in this action on

September 16, 2022, in which they did not raise any personal jurisdiction arguments, thereby

conceding the Court's jurisdiction over them.  Dkt. 55; Fed. R. Civ. P. 12(h).  Further, nowhere in

their papers did they refute Dfinity's allegation in the Complaint that New York, New York is

Arkham's principal place of business.  Compl. ¶ 23.

Despite working as an Executive Assistant for a New York-headquartered company,

Longo testifies that he does "not transact any business in New York" and that his "work does not

… target or focus on New York."  Longo Decl. ¶¶ 6-7.  He claims to be a West Bend, Wisconsin

resident and also a part-time resident of London, United Kingdom.  *Id.* ¶¶ 3-4.  As alleged in the Complaint, Longo fled the United States for London with the other Arkham Defendants after the Report was published, to live in a $40,000 per month mansion, which was paid for with the money they had illicitly earned in return for publishing their false and defamatory hit piece about Dfinity at the behest of the billionaire crypto investor who commissioned their work.  Compl. ¶¶ 12, 25.

Publicly available, investigative video footage posted on Crypto Leaks features Longo making the statements listed above, in which he takes joint credit for, and admits his complicity in, Arkham's defamatory Report concerning Dfinity.  *See* https://crypto-leaks.info/case-no-2 (last accessed Oct. 25, 2022), cited in Compl. ¶¶ 13-14, 31 & nn.1-2, 14.  These statements are incorporated by reference into the Complaint, *see supra* at n.1, and are consistent with the other allegations in the Complaint that Longo co-authored the Report and otherwise participated in the publication of the Report and related Video.  Compl. ¶¶ 25, 52, 56.  Also in the Crypto Leaks videos, and as alleged in the Complaint, Longo reveals intimate, non-public information regarding the genesis and funding of Arkham and the Report—namely, that a billionaire crypto investor hired Arkham to create the Report, contrary to public statements by Arkham CEO Morel that Arkham was not hired or paid to produce the Report.  *Id.* ¶¶ 8, 13-14, 31 & nn.1-2, 14.

## <u>ARGUMENT</u>

### I.    **Legal Standard**

On a Rule 12(b)(2) motion made prior to discovery, "the plaintiff need persuade the court only that its factual allegations constitute a *prima facie* showing of jurisdiction." *Dorchester*, 722 F.3d at 85; *see also id.* at 84 ("Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction.").  A plaintiff responding to a pre-discovery Rule 12(b)(2) motion

"'may rely entirely on allegations of fact, and … will prevail even if the moving party makes contrary allegations which controvert their *prima facie* case.'" *Prejean v. Infosys Ltd.*, No. 20-cv-8018, 2022 WL 4620154, at *4 (S.D.N.Y. Sept. 3, 2022) (citation omitted). Parties may submit evidence with, and in opposition to, a Rule 12(b)(2) motion, but courts must "'construe the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor'" in deciding such a motion. *Dorchester*, 722 F.3d at 85 (citation omitted). As in the context of a Rule 12(b)(6) motion, the Court "assumes the truth of the plaintiff's factual allegations for purposes of the [Rule 12(b)(2)] motion." *Id.* (citation omitted).

## II.      The Court Has Specific Personal Jurisdiction Over Longo

In a federal diversity action brought in New York, courts determine personal jurisdiction by (1) applying the New York long-arm statute and (2) analyzing whether personal jurisdiction comports with the Due Process Clause of the U.S. Constitution, which involves inquiries into (a) minimum contacts and (b) reasonableness. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010). New York's long-arm statute "'is a single act statute,'" meaning "'proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities … were purposeful and there is a substantial relationship between the transaction and the claim asserted.'" *Id.* (quoting *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 43 (N.Y. 1988)). Applying this standard, the Second Circuit held in *Chloe* that "the single act of an out-of-state defendant employee shipping an item into New York, combined with his employer's extensive business activity involving New York, gives rise to personal jurisdiction over the employee." *Id.* at 165.

### A.      The New York Long-Arm Statute Confers Jurisdiction Over Longo

As relevant here, the New York long-arm statute provides for jurisdiction over a non-domiciliary who (1) "transacts any business within the state" or (2) "commits a tortious act

within the state," where the plaintiff's claims "aris[e] from" such acts.  N.Y. C.P.L.R.

§ 302(a)(1), (2).  CPLR § 301(a)(2) contains an exception for defamation, but Dfinity brings a

claim against Longo for violation of Section 349, as well as for defamation.  Compl. ¶¶ 55-60.

CPLR § 301(a)(1) supports jurisdiction over non-residents who commit torts for either

defamation or a violation of Section 349.  *See Symmetra Pty Ltd. v. Hum. Facets, LLC*, No. 12-

cv-8857, 2013 WL 2896876 at *5-6 (S.D.N.Y. June 13, 2013); *Pray v. Oughtred & Harrison*

*(Shipping) Ltd.*, No. 98-cv-0599, 1999 WL 173591, at *4 (S.D.N.Y. Mar. 26, 1999).

### 1.    Longo Transacts Business Within the State

An individual "transacts … business" in New York if he engages in "purposeful

activities" within the State, through which he "'invok[es] the benefits and protections of its

laws.'"  *Biro v. Conde Nast*, No. 11-cv-4442, 2012 WL 326770, at *9 (S.D.N.Y. Aug. 10, 2012)

(citations omitted).  A claim "arises" out of a New York transaction where there is an

"'articulable nexus'" or "'substantial relationship'" between the two.  *Id.* (citation omitted).  No

causal relationship is required.  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d

161, 168-69 (2d Cir. 2013).  A non-resident corporate employee who is one of the "primary

actors" in a New York transaction undertaken in his corporation's name "transacts … business

within the state" for the purposes of New York's long-arm statute.  *Retail Software Servs., Inc. v.*

*Lashlee*, 854 F.2d 18, 22 (2d Cir. 1988).

Longo transacts significant business in the New York under CPLR § 302(a)(1) as the

Executive Assistant to the CEO of Arkham, a company headquartered and with its principal

place of business in New York.  *See supra*, at Background.  Longo testifies his "responsibilities

include coordinating the CEO's schedule, managing general company logistics, and otherwise

supporting the CEO in the running of Arkham's operations."  Longo Decl. ¶ 9.  All of this

activity is purposeful.  Moreover, Dfinity has alleged, and the Court must accept as true at this

stage, that "Arkham was founded and capitalized for only one purpose, to cause reputational damage to Dfinity and investors."  Compl. ¶ 12.  Accordingly, Longo's purposeful activities, as an Executive Assistant at Arkham, have both an "articulable nexus" to and "substantial relationship" with Dfinity's claims for defamation and violation of Section 349, because he supports an enterprise whose sole purpose during the relevant time period was to defame Dfinity. Additionally, Dfinity has alleged that Longo co-authored the Report, and that he, along with the other Arkham Defendants and their financier, colluded with the Times Defendants to market and further disseminate the Report through *The New York Times*, a New York publication.  Compl. ¶¶ 17, 20, 25.  This also is purposeful activity that forms the basis for Dfinity's claims and otherwise renders Longo a "primary actor" in Arkham's New York torts.  *See Retail Software Servs.*, 854 F.2d at 22.  Because of Arkham's activity as a New York-headquartered company that published the Report and Video from New York and colluded with *The New York Times* to further distribute its defamatory statements, Longo's New York conduct is sufficient to provide this Court with jurisdiction over him.  *See Chloe*, 616 F.3d at 165.

### 2. Longo Committed Tortious Acts Within the State

Longo also committed a tort within New York other than defamation under CPLR § 302(a)(2) by violating Section 349.  Compl. ¶¶ 55-59.  Dfinity alleges that Longo violated Section 349 "in publishing or causing to be published false and defamatory statements in the Arkham Video, the Arkham Report, and the [Times] Article."  *Id.* ¶ 56.  Arkham published the Report and Video from its principal place of business in New York.  *See supra*, at Background; Compl. ¶ 23.  Arkham also colluded with the Times Defendants, who are located or work in New York, to further publicize its defamatory statements in *The New York Times*.  *Id.* ¶¶ 17, 20-22. Even accepting Longo's testimony that he has "never traveled to New York in connection with [his] work for Arkham," Longo Decl. ¶ 7, it is well-settled that "'jurisdiction under § 302(a)(2)

may extend to out-of-state individuals who did not themselves commit a tort while physically present in New York but who can be deemed responsible for such a tort based upon theories of agency.'" *Int'l Diamond Importers, Inc. v. Oriental Gemco (N.Y.), Inc.*, 64 F. Supp. 3d 494, 519 (S.D.N.Y. 2014) (citation omitted); *see also Emerald Asset Advisors, LLC v. Schaffer*, 895 F. Supp. 2d 418, 430 (E.D.N.Y. 2012) ("'[T]he New York activities of a 'co-conspirator' may also be imputed to an out-of-state defendant for purposes of personal jurisdiction under § 302(a)(2) under an agency rationale.'") (citation omitted).  Thus, Arkham's violation of Section 349 within New York can be attributed to Longo because he co-authored the Report and otherwise contributed to and benefited from Arkham's Section 349 violation.  Compl. ¶¶ 25, 52, 56.

### 3. Longo Fails to Rebut the Applicability of CPLR §§ 302(a)(1) and 302(a)(2)

Longo's defense to Dfinity's allegations that the New York long-arm statute applies is that they are false because he was not employed by Arkham until after the Report was published. Dismissal under Rule 12(b)(2), prior to any discovery, however, is not appropriate on the basis of self-serving merits declarations stating, in effect, that "none of [the plaintiff's alleged] interactions ever happened." *Prejean*, 2022 WL 4620154, at *4.  In *Prejean*, the court rejected three such declarations and exercised specific jurisdiction over individual defendants on the basis of the plaintiff's "'allegations of facts.'"  *Id.*  The same result should follow here given the identical procedural posture.

Moreover, Longo's conclusory testimony on these issues begs for cross-examination and documentary support, of which he conspicuously provides none.  For example, he testifies that he does not "transact any business in New York" and that his "work does not otherwise target or focus on New York," but substantial evidence, including Arkham's own websites and governmental filings, demonstrates Arkham is headquartered in New York.  Longo Decl. ¶¶ 6-7;

Fua Decl., Exs. A-E.  It is therefore unclear how Longo's testimony can be accurate.  Moreover, Longo testifies that he played no role in the defamatory Report or Video, but he is featured in Crypto Leaks videos, the authenticity of which he does not challenge, stating the opposite: for example, he states, "*we* published [the Report]" and the Report was "*our* best effort," containing "*our* best information that *we* [could] pull together."  Longo Decl. ¶¶ 12, 14, 16; https://crypto-leaks.info/case-no-2 (last accessed Oct. 25, 2022), cited in Compl. ¶¶ 13-14, 31 & nn.1-2, 14 (emphases added).  It would be improper to adjudicate at this stage—prior to discovery that would include cross-examination, the production of documents, and the examination of other Arkham witnesses—whether this was idle dinner conversation as Longo contends or the admission of complicity that appears on the face of the statements.

In sum, Dfinity has satisfied its burden to make a *prima facie* showing that the New York long-arm statute confers jurisdiction over Longo.

### B.     Exercising Jurisdiction Over Longo Comports with the Due Process Clause

Dfinity has also satisfied its burden to make a *prima facie* showing that exercising jurisdiction over Longo comports with the Due Process Clause of the U.S. Constitution.  Longo's "minimum contacts" with New York are the same, purposeful contacts discussed above, which bring him within the New York long-arm statute, sections 302(a)(1) and (a)(2).  *See Goodyear Dunlop Tires Operations, SA v. Brown*, 564 U.S. 915, 924, 131 S. Ct. 2846, 2854 (2011) (requiring "'some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws'") (citations omitted); *see also Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 169 (2d Cir. 2015) (noting that while not technically coextensive, it is only the "rare" case that results jurisdiction under New York long-arm statute but not the Due Process analysis).  Moreover, Dfinity's claims "'arise out of or relate to the defendant's contacts' with the forum" for the same

reasons its claims arise out of Longo's conduct under the New York long-arm statute.  *See Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021); *see also id.* (holding the "arise out of or relate to" standard does not require any "causal showing").

Exercising jurisdiction over Longo would also be "reasonable."  Courts evaluate reasonableness by evaluating the following factors: "'(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.'"  *Prejean*, 2022 WL 4620154, at *5 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945)).  Upon a "'threshold showing' of minimum contacts," which Dfinity has made for the reasons discussed above, the burden shifts to the defendant to "come forward with a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"  *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 99 (2d Cir. 2000) (citation omitted).  Longo has not made any "compelling" case against the Court's exercise of jurisdiction.

As to the burden of litigating in New York, Longo's Declaration is silent.  Longo's counsel makes conclusory legal arguments in his Motion, but Longo himself does not swear under oath to any actual burden of litigating this case in New York.  His silence is unsurprising because he is the Executive Assistant to the CEO of a company headquartered in New York, and presumably can be called to travel to New York on company business at any time consistent with his job responsibilities.  Moreover, he is represented by able New York counsel, which is also representing his company, Arkham, his boss, Morel, and his co-worker, Lerangis, all apparently at Arkham's expense.  Furthermore, given his claimed domicile of Wisconsin, Dfinity would

11

depose him in Wisconsin, and any exchange of documents would be made electronically, mitigating any purported burden.

As to the interests of the forum state, New York has a significant interest in adjudicating the publication of defamatory statements by a company headquartered in New York. *See generally Lyman Commerce Sols., Inc. v. Lung*, No. 12-cv-4398, 2014 WL 476307, at *2 (S.D.N.Y. Feb. 6, 2014) (a state has an "interest in regulating behavior within its borders"). This interest is even greater where the defamatory statements are further disseminated in *The New York Times*, a New York publication. New York also has a significant interest in adjudicating violations of Section 349, a New York statute. *See generally Centrifugal Force, Inc. v. Softnet Commc'ns, Inc.*, No. 08-cv-5463, 2009 WL 1059647, at *8 (S.D.N.Y. Apr. 17, 2009) (recognizing "'New York's interest in enforcing its laws'" in reasonableness analysis).

Regarding Dfinity's interest in obtaining convenient and effective relief, Dfinity's choice of forum is entitled to deference notwithstanding the fact it is a Swiss company. *See Amimon Inc. v. Shenzhen Hollyland Tech. Co.*, No. 20-cv-9170, 2021 WL 5605258, at *6 (S.D.N.Y. Nov. 30, 2021). This is particularly true where, as here, Dfinity's forum choice "is motivated by convenience" on the ground that "the cause[s] of action underlying [Dfinity's] claim[s] occurred in New York," "at least some witnesses and evidence is available in the forum district," and "New York offers a forum where jurisdiction exists over both [sets of] defendants"— here the Times Defendants and the Arkham Defendants, of which Longo and Bennett are the only defendants to make jurisdictional arguments. *Id.*

The interstate judicial system's interest in obtaining the most efficient resolution of this dispute also demands that there be a single lawsuit, here in this forum. Longo proposes an identical, parallel lawsuit in Wisconsin, and argues such an outcome would be efficient because "this litigation would be further along and likely to result in decisions with preclusive or

12

persuasive effect." Longo Mot. at 8. This argument is entirely speculative. Two cases concerning identical facts, issues, witnesses, and claims, proceeding in parallel in two districts, would risk inconsistent results, waste resources in both courts, and significantly inconvenience Dfinity and Longo's indisputably New York-based co-defendants, the Times Defendants, who would be required to participate in both lawsuits.

Finally, Longo has identified no "substantive social policies" in this case counseling for or against the Court's exercise of jurisdiction. Accordingly, the Court's exercise of jurisdiction over Longo would be reasonable.

### C.      In the Alternative, Dfinity Requests Jurisdictional Discovery

Dfinity's *prima facie* showing of this Court's jurisdiction over Longo is sufficient for the Court to deny Longo's Motion and order that this case proceed to discovery. *See Prejean*, 2022 WL 4620154, at *4-6. Formal, fulsome discovery, including the production of documents (of which Longo has provided the Court none) and the deposition of Longo and the other Arkham Defendants to corroborate or refute Longo's testimony, will answer any questions that Longo's submissions may raise. Longo may then move, after discovery, for appropriate relief if warranted by the facts, consistent with the Federal Rules of Civil Procedure. Longo's submissions provide no basis to short circuit the ordinary sequence of litigation.

In the alternative, and to the extent the Court finds the Complaint or Dfinity's opposition insufficient in any regard as to Longo, Dfinity respectfully requests jurisdictional discovery. Courts have "'considerable discretion'" to grant jurisdictional discovery "'even where a plaintiff has *not* made a *prima facie* showing of personal jurisdiction,'" where the Court concludes that the plaintiff "'*may* be able to establish jurisdiction if given the opportunity to develop a full factual record.'" *Piotrowicz v. Techtronic Indus. N. Am., Inc.*, No. 19-cv-11522, 2021 WL 1721709, at *3 (S.D.N.Y. Apr. 30, 2021) (citations omitted) (emphases added); *see also In re*

13

*Sledziekjowski*, No. 13-22050, 2016 WL 6155929, at *10-11 (Bankr. S.D.N.Y. Oct. 21, 2016) (granting jurisdictional discovery including the production of documents and depositions where the plaintiff made a "'sufficient start toward establishing personal jurisdiction'" and "the facts about the Movants' contacts relevant to personal jurisdiction lie within the Movants' knowledge") (citations omitted).  Here, Dfinity *has* made a *prima facie* showing of personal jurisdiction for the reasons discussed above.

In *Piortrowicz*, the court granted jurisdictional discovery notwithstanding the defendant's submission of a declaration, like Longo's, nakedly claiming it does not transact business in New York.  2021 WL 1721709, at *4.  The court ruled that the plaintiff's allegations were "not fully rebutted by the [defendant's] Declaration, which leaves open questions" on a number of topics germane to the Court's jurisdiction.  *Id.* at *6.  The same result should follow here because there are many questions left open by Longo's declaration relevant to the personal jurisdiction inquiry, including how it can be true that he does not transact business in New York when he is the Executive Assistant to the CEO of a New York-headquartered company; how he allegedly had no role in the New York-published Report but states in a recorded conversation that "*we* published" the Report and otherwise reveals intimate, non-public knowledge about the Report's funding, genesis, and how its subject, Dfinity, "just made sense to research *at the time*"; and so forth.  *See* https://crypto-leaks.info/case-no-2, cited in Compl. ¶¶ 13-14, 31 & nn.1-2, 14 (emphases added).

If jurisdictional discovery is permitted, Dfinity would seek Longo's deposition to cross-examine him on each assertion made in his Declaration and the Crypto Leaks videos.  Dfinity would also seek documents relating to each assertion.  In particular, Dfinity would seek discovery on at least the following topics: (i) Longo's precise activities around the time the Report was published; (ii) his start date with Arkham; (iii) his relationships with the Arkham Defendants and any company with which any Arkham Defendant has or had an affiliation (such

14

as Morel's Reserve Protocol) prior to his formal start date at Arkham; (iv) his and Arkham's relationship with Arkham's financier, the billionaire crypto investor that funded the Report who Longo identified in the Crypto Leaks videos, and any other individual or entity that stood to profit from a decline in the price of ICP or injury to Dfinity's business; (v) his and Arkham's relationship, communications, and activities with the *Times* relating to Dfinity, the Report at issue, and the billionaire crypto investor; (vi) his and others' short positions in ICP, if any, and other pertinent investments during the relevant time period; (vii) any and all travel to and contacts with New York during the relevant time period, whether related to his formal employment with Arkham or not; and (viii) the basis for his knowledge regarding the Report's genesis and funding, and the time and circumstances under which he obtained such knowledge.

Each of these topics is probative of this Court's jurisdiction over Longo because whether he was formally employed by Arkham at the time the Report was published is irrelevant to his liability for defamation or a violation of Section 349.  *See, e.g.*, *Khalil v Fox Corp.*, No. 21-cv-10248, 2022 WL 447622, at *4 (S.D.N.Y. Sept. 26, 2022) ("[U]nder New York law, all who take part in the procurement, composition and publication of a libel are responsible in law and equally so.") (cleaned up).  Indeed, Arkham appears to operate informally and as a start-up: its employees, all in their 20s, have worked out of residential properties in New York and London where they have simultaneously lived together "frat boy style."  Compl. ¶ 12; *see also* https://cryptoleaks.info/case-no-2 (noting the "fluid nature of Arkham's composition" and that Arkham "should not be thought of as a traditional company").  It is therefore more than plausible that Longo or others not formally employed by Arkham nevertheless contributed to the Report. *See Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 711, 716 & n.3 (S.D.N.Y. 2014) (declining to dismiss individual not alleged to be employed by the corporate defendant in defamation suit where the plaintiff otherwise alleged that he "met with a reporter … to further

15

disseminate the defamatory allegations" and "helped draft the defamatory allegations … and worked with other defendants to prepare them for final publication").

Given Longo's statements in the Crypto Leaks videos that he did, in fact, contribute to the Report, Dfinity is entitled to cross-examine him on the above issues and to obtain related documents before any dismissal is granted. *See In re Sledziekjowski*, 2016 WL 6155929, at *11.

## III.    Dfinity States Claims for Defamation and Violation of Section 349 Against Longo

Separately, Longo argues under Rule 12(b)(6) that the Complaint lacks sufficient allegations against him to state claims for defamation or violation of Section 349. Longo Mot. at 8-9. Longo is incorrect. The Complaint alleges his affiliation with Arkham, which he confirms in his Declaration. Compl. ¶ 1. The Complaint further alleges that he co-authored the Arkham Report and published or caused to be published both the Arkham Report and Video. *Id.* ¶¶ 25, 52, 56. Additionally, the Complaint alleges, and incorporates by reference, recorded video footage of Longo admitting his contributions to the Report and revealing intimate, non-public information regarding the Report's genesis and funding. *Id.* ¶¶ 13-14, 31 & nn.1-2, 14 (citing https://cryptoleaks.info/case-no-2 (last accessed Oct. 25, 2022)); *supra*, at Preliminary Statement; Background. Finally, for the reasons discussed in Dfinity's Omnibus Opposition, Dfinity adequately alleges all other elements of its defamation and Section 349 claims against Longo. *See* Dkt. 78 at 18-45. The Complaint therefore satisfies the minimum Rule 8 pleading standard as to Longo. *See Palin*, 940 F.3d at 810.

Finally, Longo joins in the Arkham Defendants' arguments for dismissal. Longo Mot. at 9. The Arkham Defendants' arguments each fail for the reasons discussed in Dfinity's Omnibus Opposition, incorporated by reference herein. *See* Dkt. 78 at 18-45.

## <u>CONCLUSION</u>

For the foregoing reasons, Longo's motion to dismiss should be denied.

Dated: November 3, 2022                          Respectfully submitted,


By: */s/ Charles J. Harder*
        Charles J. Harder, Esq.
        Emmanuel Fua, Esq.
        HARDER LLP
        100 Park Avenue, Sixteenth Floor
        New York, New York 10017
        (212) 799-1400

        *Counsel for Plaintiff*