## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

<table>
<tr><td>DFINITY FOUNDATION,</td><td></td></tr>
<tr><td align="center">Plaintiff,</td><td></td></tr>
<tr><td>v.</td><td>Case No. 1:22-cv-5418-LAK</td></tr>
<tr><td>THE NEW YORK TIMES COMPANY, et al.,</td><td></td></tr>
<tr><td align="center">Defendants.</td><td></td></tr>
</table>

## REPLY BRIEF IN SUPPORT OF DEFENDANT JONAH BENNETT'S MOTION TO DISMISS

Plaintiff Dfinity Foundation's opposition to Defendant Jonah Bennett's motion to dismiss (D.89) is unavailing. Dfinity largely argues that its "upon information and belief" pleading is sufficient to require Mr. Bennett to defend this lawsuit. At the same time, in an effort to breathe life into its skeletally-pled conspiracy theory, Dfinity incorporates material outside of its Complaint in an effort to state plausible claims against Mr. Bennett. This Court should grant Mr. Bennett's motion to dismiss.

**I.        Dfinity's complaint is insufficient to state a defamation claim against Mr. Bennett.**

"For the purposes of [a 12(b)(6) motion], this Court must accept as true all allegations in the complaint and draw all *reasonable* inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chemical Co.*, 517 F.3d 104, 115 (2d Cir.2008) (emphasis added). This means a court must not accept Dfinity's "decidedly unreasonable inferences." *Newman v. Herbst*, No. 09-CV-4313 (TLM), 2010 WL 680999, at *1 (E.D.N.Y. Feb. 25, 2010).

Dfinity's Complaint contains two conclusory, brief statements about Mr. Bennett: (1) that he is among "other current or former Arkham officers, agents, employees, or affiliates" and (2)

that he "co-authored the Arkham Report." (D.1 ¶¶ 1, 25.)  Aside from conclusory assertions, Dfinity provides no basis for these allegations. Dfinity must allege facts sufficient to support its claims, and it did not do so here.

**A.      Dfinity's pleading is insufficient to state a plausible claim that Mr. Bennett wrote, co-authored, or otherwise published the Arkham Report.**

In its opposition, Dfinity argues it satisfies the plausibility pleading standard because it did allege sufficient facts to support the assertion that Mr. Bennett is an appropriate defendant in this case. Dfinity's argues that the following allegations are sufficient for its Complaint to survive Rule 12(b)(6) scrutiny:

> Dfinity has alleged that Bennett (i) co-authored the Report; (ii) participated in the publication of the Report and Video; (iii) colluded with the Times Defendants in their publication of the Article; (iv) fled the country with the other Arkham Defendants after the Report was published to reside in their London mansion with them, which they paid for with the illicit funds they received for producing the Report; (v) was privy to and revealed non-public information regarding the funding and genesis of the Report; (vi) which information was identical to and independently corroborated by an admitted Arkham insider, defendant Longo, and (vii) allowed his home address to be the registered place of business for the Arkham enterprise whose sole purpose at the time was to produce the paid-for, defamatory Report.

(D.89 at 15 (citing D.1 ¶¶ 1, 12-14, 17, 25, 52, 56).) In reality, Dfinity's Complaint contains allegations that Bennett (i) co-authored the Arkham Report and (iv) resided in London—though Dfinity never alleged that Mr. Bennett, who is not a United States Citizen and who does not have a visa to permanently work live in the United States, "fled" the country.

But there is a problem: none of the other claims about Bennett are made anywhere in the Complaint. Indeed, some of the cited paragraphs, such as paragraphs 14 and 17, specifically refer to other defendants. Bringing in material outside of the Complaint, Dfinity further claims it is known that "Arkham operates informally and as a 'frat-bro' style start-up, employing numerous male individuals in their 20s in various live/work arrangements," and that Mr. Bennett "admits

on his personal website that he 'advises several companies on the side." (D.89 at 15-16 (citing two websites, https://cryptoleaks.info/case-no-2, and https://jonahbennett.com/)).

Dfinity does not claim to have any additional "information and belief" beyond Mr. Bennett's website and the Cryptoleaks site. Aside from the clips of surreptitious audio, which Dfinity acknowledges refers to Arkham in the third person,  involve Mr. Bennett speculating (using terms like "I think"), and personal attacks on Mr. Bennett unrelated to Arkham and its reports, the only statements about Mr. Bennett are that Cryptoleaks believes he "is one of Arkham's key team members or affiliates and the person whose home address is the registered place of business for Arkham." (D.89 at 8.) Cryptoleaks does not claim that Mr. Bennett is an employee or consultant for Arkham. It does not claim that he wrote or contributed to the contested Report. It does not claim he "fled" to London with the other members of Arkham or that he lived with them in Austin.

Based on the barebones statements made in the Complaint, the Cryptoleaks.info article, and Mr. Bennett's personal website, the only plausible allegations made about Mr. Bennett are: (1) he has been roommates with members of Arkham; (2) he speculated about non-public information about Arkham; and (3) he claims that he "advises" some unnamed companies. The other "inference" repeatedly made is Arkham's "Frat bro" culture, always using quotations though the Cryptoleaks site does not refer to Arkham as "bros" or as having a "Frat bro" culture. What Dfinity appears to mean by "Frat bro" is "Individuals in their 20's:" living with other roommates in large cities. (D.89 at 12, 17.). Mr. Bennett was in his 30s when the Arkham Report was published. None of this is sufficient to state a defamation claim against Mr. Bennett.

**B.    Dfinity relies on unreasonable inferences to make implausible allegations.**

"On a motion to dismiss, the Court is not obligated to draw unreasonable inferences in plaintiff's favor." *Sullivan v. Chappius*, 711 F. Supp. 2d 279, 287 (W.D.N.Y. 2010) (internal

citations omitted). According to Dfinity, Bennett improperly made arguments "regarding his alleged lack of involvement in the Report [which] are factual in nature, disputed, and contradict the allegations in the Complaint." (D.89 at 18.) However, Mr. Bennett is not arguing that Dfinity's factual claims are false at this stage of this litigation. What Mr. Bennett is arguing is that Dfinity has not pleaded its claims beyond bare "information and belief."

Again, at the Rule 12(b)(6) stage, the court must draw "all *reasonable* inferences in the plaintiff's favor." *Westchester Teamsters Pension Fund v. UBS AG*, 604 F. App'x 5, 6 (2d Cir. 2015). (emphasis added). "To survive a motion to dismiss, a complaint must contain *sufficient factual matter*, accepted as true, to state a claim to relief that is *plausible* on its face." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179 (2d Cir. 2014) (emphasis added).

It is unreasonable to infer thatbecause Bennett advises some companies, made conjectures about the Arkham Report when referring to it in the third person, and had been roommates with some members of Arkham to assume that he wrote the Arkham Report, contributed to it, and colluded with the New York Times to publish it, as Dfinity claims in its motions. *See Dodd v. Raytheon Sys. Co.*, 271 F. App'x 696, 698 (9th Cir. 2008) ("[U]nwarranted deductions of fact, or unreasonable  inferences are not sufficient to defeat a motion to dismiss.") (internal quotations omitted).

In its opposition, (D.89 at 11 n.4), Dfinity claims that Bennett was "unambiguously" one of the "Arkham representatives" referred to in paragraph 13 of the Complaint, which says "Arkham representatives admitt[ed] that Arkham was in fact hired and paid a significant sum by a wealthy individual to create the Arkham Report," (D.1 ¶ 13). Arkham then states that this Court must accept its speculative "inference" that the reason Mr. Bennett referred to Arkham in the third person was because, among other reasons, "he may have been sensitive to the potential

liability in directly admitting complicity." (D.89 at 19.) These are not "reasonable inferences" and in fact are in conflict. If Mr. Bennett was concealing his affiliation with Arkham, he could not also be a "representative" of the company.

This lack of plausibility and reasonable inference distinguishes this from cases where allegations based on "information and belief" survived a Rule 12(b)(6) challenge. In *Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010), which Dfinity cites, the "information and belief" upon which the court accepted at the motion to dismiss stage was based on strong inferences from the Exhibits to the complaint, specifically "lists of specific songs found in the respective Doe defendants' file-sharing folders, on the date shown, at the time indicated, on the specified online, peer-to-peer, file sharing network. *Id.* at 121. As the Second Circuit put it, the references to the Doe defendant in *Arista Records*, and the underlying wrongful conduct, "could hardly be more specific." *Id*. at 122.

Here, by contrast, Mr. Bennett specifically addressed not only the face of Dfinity's pleading but the website materials incorporated into its Complaint. Far from confirming Mr. Bennett's involvement in this alleged defamatory conspiracy, the surreptitiously-recorded video shows Mr. Bennett referring to Arkham in the third person. The reasonable inference to draw is that Mr. Bennett was merely commenting on Arkham as an observer of the cryptocurrency industry, speculating as to Arkham's motivations and plans for the Arkham Report.

**C.    Dfinity's claimed authority for group pleading is inapplicable to Mr. Bennett.**

Dfinity opens its brief by citing *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 Supp. 3d 705 (S.D.N.Y. 2014), for the proposition that "all who take part in the procurement, composition and publication of a libel are responsible in law and equally so." (D.89 at 8 (quoting *Restis*, 53 Supp. 3d at 716).) However, *Restis* notes the "Original Complaint" was deficient for providing "little more detail regarding" certain defendants "than their names and titles." *Restis*,

53 F. Supp. 3d at 717. The court held that the second amended complaint, which described how the defendant "runs the day-to-day operations of UANI, directed the 'name and shame' campaign against Plaintiffs, participated in drafting the defamatory publications, and coordinated UANI staff in producing and distributing the publication" was sufficient to survive a motion to dismiss. *Id.* Suffice to say, the barebones claim against Bennett, which does not even specify his title or relationship with Arkham, does not meet that standard.

Dfinity also relies heavily on *Vantone Grp. LLC v. Yangpu NGT Industrial Co.*, No. 13-cv-7639, 2015 WL 4040882, at *4 (S.D.N.Y. July 2, 2015)). This case accepted group pleading, but that was because the Complaint made "factual allegations that distinguish between the conduct of the Moving Defendants." *Id.* at *4. That is not case here. Dfinity lumps various defendants together without specifying how they relate to one another. Dfinity refers to Mr. Bennett along with five other named individual defendants, ten John Doe defendants, and unnamed "current or former Arkham officers, agents, employees or affiliates" as the "Arkham Defendants," and proceeds to refer to them throughout the Complaint. (*See* D.1 ¶¶ 1, 12, 14-15.) Mr. Bennett is connected to at least fifteen other wrongdoers, more than half of whom Dfinity does not even identify.

## II.   Dfinity's Section 349 claim against Mr. Bennett should be dismissed.

In his motion to dismiss, Mr. Bennett acknowledges that "[s]ection 349 does not always require an intentional mens rea." (D.83 at 9.) However, Mr. Bennett cited section 349 cases where consultants were required to have "actual knowledge." (*Id.* (citing *People by Schneiderman v. Orbital Publ'g Grp., Inc.*, 169 A.D.3d 564, 566, 95 N.Y.S.3d 28, 30 (2019)). Dfinity responds by citing numerous cases in which intent was not an element for Section 349. (D.89 at 14-15), and accuses Mr. Bennett of trying to "create new law specific to 'consultants,'" (*id.* at 15.) To clarify, Mr. Bennett does not claim that the fact that he is alleged to be a

6

"consultant" changes section 349, but rather that when  faced with vague allegations based on Arkham's alleged wrongdoing—general principles of agency apply. This is why *Orbital* cited cases involving liability for non-employees in the fraud context.

Dfinity then claims this is immaterial because it "has not alleged that Mr. Bennett was an Arkham 'consultant.'" (D.89 at 15.) However, Dfinity, claims its evidence that Mr. Bennett had a relationship with Arkham was that his website said he "advises several companies on the side," which it claims is evidence he is "an alleged non-employee" who still has a relationship with Arkham. (*Id.* at 16.) Mr. Bennett is unaware of any distinction between "consultant" and a "non-employee" engaged in "advising companies on the side."

## III.    This Court should not exercise personal jurisdiction over Mr. Bennett.

Dfinity's Complaint contains two references to Mr. Bennett, neither of which establish his connection with New York. In fact, the lone location-related allegation against Mr. Bennett is that he currently resides in London, England. (D.1 ¶ 25.) As noted above, Dfinity's Complaint contains no details regarding Mr. Bennett's involvement in the creation, development, or publication of the Arkham Report, much less any detail regarding how Mr. Bennett's alleged conduct relates to New York. As with the merits of Dfinity's defamation claim, Mr. Bennett should not have to defend this litigation in New York simply because he is alleged to have lived in the same house as some of the other named defendants, that he is aware of some non-public Arkham information, and that he advises some unnamed companies.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Dfinity's Complaint against Mr. Bennett.

Respectfully submitted this the 28th day of November, 2022.

By:    */s/ James R. Lawrence, III*
        James R. Lawrence, III (admitted pro hac vice)
        NC State Bar No. 44,560
        ENVISAGE LAW
        2601 Oberlin Rd, Suite 100
        Raleigh, NC 27608
        Telephone: 919.755.1317
        Facsimile: (919) 782.0452
        Email: jlawrence@envisage.law

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 28th day of November, 2022 a copy of the foregoing **REPLY BRIEF IN SUPPORT OF DEFENDANT JONAH BENNETT'S MOTION TO DISMISS** was served upon all counsel of record through the Court's CM/ECF systems.

This the 28th day of November, 2022.

By:    _/s/ James R. Lawrence, III_
        James R. Lawrence, III (admitted pro hac vice)