UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
DFINITY FOUNDATION,

               Plaintiff,

      -against-                                   22-cv-5418 (LAK)

THE NEW YORK TIMES COMPANY, et al.,

               Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

                      Charles J. Harder
                      Emmanuel Fua
                      HARDER LLP
                      *Attorneys for Plaintiff*

                      Dana R. Green
                      THE NEW YORK TIMES COMPANY
                      *Attorney for Defendants The New York Times*
                      *Company, Andrew Ross Sorkin, and Ephrat Livni*

                      Jeffrey A. Simes
                      Meghan K. Spillane
                      GOODWIN PROCTER LLP
                      *Attorneys for Defendants Arkham Intelligence, Inc.,*
                      *Miguel Morel, Zachary Lerangis, and Nick Longo*

                      Daniel A. Singer
                      THE LAW OFFICES OF DANIEL A. SINGER PLLC
                      *Attorney for Defendant Keegan McNamara*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/13/23

2

Andrew James Frisch
James R. Lawrence, III
ENVISAGE LAW

*Attorneys for Defendant Jonah Bennett*

LEWIS A. KAPLAN, *District Judge.*

Plaintiff Dfinity Foundation ("Dfinity") brings this action for defamation and unfair business and trade practices against defendants The New York Times Company (the "*Times*"), reporters Andrew Ross Sorkin and Ephrat Livni (collectively, the "Times Defendants"), and Arkham Intelligence, Inc. ("Arkham"), Arkham's founder and chief executive officer Miguel Morel, and other current or former Arkham officers, agents, employees, or affiliates, including Jonah Bennett, Zachary Lerangis, Keegan McNamara, Nick Longo, and John Does 1–10 (collectively, the "Arkham Defendants"). The matter is before the Court on defendants' motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). (Dkts 50, 54, 63, 74, 82) For the reasons that follow, the defendants' Rule 12(b)(6) motions are granted.

*Facts*

The following facts are taken from the complaint and assumed to be true for purposes of evaluating the motions to dismiss.[1]

Dfinity is a not-for-profit organization, organized under the laws of Switzerland, with its principal place of business in Zurich, Switzerland.[2] Founded in 2016, Dfinity seeks to develop

---

[1]
    *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).

[2]
    Compl. ¶ 19.

"the world's first web-speed, internet-scale public blockchain," which it calls the "Internet Computer."[3] Ultimately, the Internet Computer is intended to create "a more advanced, open, decentralized, accessible, and secure blockchain-based alternative" to the World Wide Web.[4]

In May 2021, Dfinity launched its own cryptocurrency (the "ICP Token") to "enable[] users of the [Internet Computer] to participate in the ecosystem and to govern the blockchain network of the Internet Computer."[5]

Shortly after its launch, the ICP Token traded for over $270 per token as of May 10, 2021.[6] The value of the ICP Token rapidly declined thereafter and traded at a value of less than $50

---

[3]    Compl. ¶ 29.

[4]    Compl. ¶ 5.

[5]    See Compl. ¶ 6; see also What Is the ICP Token?, Internet Computer Academy, http://internetcomputer.academy/icp-token/what-is-icp-token/ (last visited Nov. 2, 2023).

Courts may take judicial notice of a party's website at the motion to dismiss stage. See, e.g., Hesse v. Godiva Chocolatier, Inc., 463 F. Supp. 3d 453, 463 (S.D.N.Y. 2020) ("[F]or purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination . . . ." (citation and internal quotation marks omitted)).

[6]    See Internet Computer, Crypto.com, https://crypto.com/price/internet-computer (last visited Nov. 2, 2023).

Courts may take judicial notice of the publicly-available price of assets, such as stocks, at the motion to dismiss stage. See Ganino v. Citizens Utils. Co., 228 F.3d 154, 166 n.8 (2d Cir. 2000) ("[T]he district court may take judicial notice of well-publicized stock prices without converting the motion to dismiss into a motion for summary judgment.").

Moreover, the movement of the ICP Token's price is integral to the plaintiff's claims. See Cortec Indus., Inc. v. Sum Holding L.P, 949 F.2d 42, 44 (2d Cir. 1991) ("Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim – and that they apparently most wanted to avoid -- may not serve as a means of forestalling the district court's decision on [a 12(b)(6)] motion.").

4

per token by June 28, 2021.[7]

On June 28, 2021, Arkham – a New York-based crypto analysis firm organized under the laws of Delaware – published a report (the "Arkham Report"), which described the drop in the ICP Token's value and set forth Arkham's analysis of potential explanations for the decline.[8] Arkham released also a video posted on its Twitter account (the "Arkham Video") with the following caption: "After a $300 billion valuation at launch, ICP tanked 95%. Everyone wants to know why. Arkham did a comprehensive analysis. This video presents our findings."[9] The Arkham Report and Video described various findings based on publicly available information, concluding that "[Arkham's] analysis has led [it] to believe that possible insiders connected to Dfinity have been dumping billions of dollars of ICP [Tokens] on exchanges at the expense of small early supporters and retail investors."[10]

Later that same day, the *Times* published an article by reporters Andrew Ross Sorkin and Ephrat Livni, entitled "The Dramatic Crash of a Buzzy Cryptocurrency Raises Eyebrows" (the "Article").[11] The Article reported on the recent rise and fall in value of the ICP Token, and it included quotations from Arkham, Dfinity, and others in the industry regarding what may or may not have contributed to the decrease in value.

---

[7]     *See id.*

[8]     Compl. ¶¶ 7–9; Green Decl. Ex. B.

[9]     Compl. ¶ 7.

[10]     *Id.*

[11]     Compl. ¶ 10; Green Decl. Ex. A.

Nearly a year later, on June 27, 2022, Dfinity filed its complaint (the "Complaint"), bringing claims as to the Arkham Defendants arising from certain statements in the Arkham Report and Video and, as to the Times Defendants, claims regarding certain statements in the Article (collectively, the "Challenged Statements"). The Complaint sounds in defamation as against all defendants and in unfair business and trade practices against the Arkham Defendants alone.[12] Broadly, it alleges that the Arkham Report was "a defamatory . . . 'hit piece'" that "was secretly bought and paid for by . . . wealthy elites who sought to personally profit from the scheme," and that the *Times* practiced slipshod journalism amounting to defamation by discussing and quoting the Report in the Article.[13] The Complaint identifies specifically twelve statements in the Arkham Report and Video and five statements in the Article, which, it alleges, are "false and defamatory."[14] It alleges also that the Arkham Defendants' publication of the Arkham Report and Video violated N.Y. Gen. Bus. Law § 349, which prohibits unfair or deceptive business acts or practices.

---

[12]     Compl. ¶¶ 50–60.

[13]     Compl. ¶ 2.

[14]     Compl. ¶¶ 35, 38, 40.

        To the extent that the Complaint alleges in conclusory terms that other, unidentified statements also were defamatory, it is legally insufficient to state a claim because it lacks the requisite specificity. *See Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC*, 864 F.3d 236, 251 (2d Cir. 2017) ("Vagueness as to the complained-of conduct is particularly inappropriate when pleading a defamation claim . . . . [T]he plaintiff [must] identify not only the publication, but also the respect in which it was allegedly false."); *see* N.Y. CPLR § 3016 ("In an action for libel or slander, the particular words complained of shall be set forth in the complaint."); 1 SACK ON DEFAMATION: LIBEL, SLANDER, AND RELATED PROBLEMS § 2:4.13 (4th ed. 2011) ("[D]efamation must be pleaded with enough specificity to permit the defendant to respond appropriately to the complaint, including the ability to allege that the communication in question was not actionable.").

*Discussion*

*Failure to State a Claim*

A.    *Legal Standard*

   To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts sufficient to "state a claim to relief that is plausible on its face."[15] This standard is met where the "pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[16] The Court accepts as true all well-pleaded factual allegations and "draw[s] all reasonable inferences in the plaintiff['s] favor."[17] However, this tenet is "inapplicable to legal conclusions" and to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[18] There is "'particular value' in resolving defamation claims at the pleading stage, 'so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms.'"[19]    "In other words, in defamation cases, Rule 12(b)(6) not only protects against the costs of meritless litigation, but provides assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively expensive."[20]

---

[15] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[16] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[17] *Rombach v. Chang*, 355 F.3d 164, 169 (2d Cir. 2004).

[18] *Iqbal*, 556 U.S. at 678.

[19] *Biro v. Condé Nast*, 883 F. Supp. 2d 441, 457 (S.D.N.Y. 2012) (quoting *Armstrong v. Simon & Schuster*, 85 N.Y.2d 373, 379 (1995)).

[20] *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 279 (S.D.N.Y. 2013).

At the motion to dismiss stage, courts may consider "the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[21] Judicial notice may be taken of documents "integral to the complaint,"[22] as well as of certain matters of public record.[23]

### B.  *Defamation Claims*

Dfinity asserts claims for defamation against all defendants.  To state a legally sufficient claim for defamation, Dfinity was obliged to allege "(1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability."[24]

Dfinity's defamation claim fails against all defendants because the Challenged Statements convey non-actionable opinions, which are protected by the First Amendment and New York law.[25] "Expressions of opinion, as opposed to assertions of fact, are deemed privileged and,

---

[21]    *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

Plaintiff has submitted a declaration of counsel and 27 exhibits in opposition to the motion.  (Dkt 56)  The Court takes judicial notice of Ex. 3 (Dkt 56-3) and considers Exs. 4 and 5 (Dkt 56-4; Dkt 56-5) as incorporated by reference in the complaint.  It excludes the declaration and all of the other exhibits, as it declines to convert the motion into one for summary judgment.  *See* Dkt 58 (citing Fed. R. Civ. P. 12(d)).

[22]    *Palin v. N.Y. Times Co.*, 940 F.3d 804, 811 (2d Cir. 2019).

[23]    *Christman v. Skinner*, 468 F.2d 723, 726 (2d Cir. 1972).

[24]    *See Cummings v. City of New York*, No. 21-1380, 2022 WL 2166585, at *3 (2d Cir. June 16, 2022).

[25]    *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 498 (2d Cir. 2013) ("New York law is, if anything, more protective of free speech interests and less expansive in permitting

no matter how offensive, cannot be the subject of an action for defamation."[26] Whether a statement is a "fact [or] opinion is 'a question of law for the courts, to be decided based on what the average person hearing or reading the communication would take it to mean' and is appropriately raised at the motion to dismiss stage."[27]

Whether a statement constitutes a protected opinion or actionable fact depends on "the content of the communication as a whole, its tone and apparent purpose."[28] Four factors guide the Court's analysis: (1) "whether the specific language in issue has a precise meaning which is readily understood or whether it is indefinite and ambiguous," (2) "whether the statement is capable of being objectively characterized as true or false," (3) "an examination of the full context of the communication in which the statement appears," and (4) "a consideration of the broader social context or setting surrounding the communication including the existence of any applicable customs or conventions which might signal to readers or listeners that what is being read or heard is likely to be opinion, not fact."[29] This is not "a rigid set of criteria," and the Court has flexibility to accord

---

causes of action based on speech, than federal law.").

26

    *Cummings*, 2022 WL 2166585, at *3 (quoting *Mann v. Abel*, 10 N.Y.3d 271, 276 (2008)).

27

    *Hayashi v. Ozawa*, No. 17-cv-2558 (AJN), 2019 WL 1409389, at *2 (S.D.N.Y. Mar. 28, 2019) (quoting *Davis v. Boeheim*, 24 N.Y.3d 262, 269 (2014)).

28

    *MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*, No. 17-cv-07568 (PGG) (KHP), 2018 WL 847014, at *6 (S.D.N.Y. Jan. 12, 2018), report and recommendation adopted, No. 17-cv-7568 (PGG), 2018 WL 4735717 (S.D.N.Y. Sept. 29, 2018) (citing *Immuno AG v. Moor-Jankowski*, 77 N.Y.2d 235 (1991)).

29

    *Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 178–79 (2d Cir. 2000) (quoting *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 292 (1986)).

weight to each factor as "the specific circumstances warrant."[30]

The Challenged Statements made by both the Times Defendants and the Arkham Defendants plainly are opinions, not statements of fact, and thus are not actionable.

### 1.   Challenged Statements by The Times Defendants

Dfinity initially brought its defamation claim against the Times Defendants based on five statements.[31]  It now has abandoned its claim premised on two of those statements.[32]  None of the three remaining Challenged Statements is actionable.

Challenged Statement 1 was that: "[t]he [Internet Computer Project], years in the works, generated a lot of buzz last month ahead of its initial coin offering, the crypto equivalent of a company going public and listing shared for investors to buy."[33]  Dfinity argues that this sentence "stat[ed] or strongly impl[ied]" that Dfinity "violated federal securities laws" by "engag[ing] in the unregistered sale of securities."[34]

---

[30]

Steinhilber, 68 N.Y.2d at 291–92.

[31]

Compl. ¶ 35.

[32]

See Lipton v. Cnty. of Orange, NY, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed."); Hanig v. Yorktown Cent. Sch. Dist., 384 F.Supp.2d 710, 723 (S.D.N.Y. 2005) ("[B]ecause plaintiff did not address defendant's motion to dismiss with regard to this claim, it is deemed abandoned and is hereby dismissed.").

[33]

Compl. ¶ 35(a).

[34]

Dkt 78, at 15.

Dfinity's interpretation of that statement in the Article is "strained" and "artificial."[35] The comparison of the ICP Token launch to the initial public offering of a company's stock plainly was an innocuous analogy and not a factual assertion that the ICP Token is a security or that Dfinity violated the securities laws.  Accordingly, Statement 1 constitutes non-actionable opinion.

Challenged Statement 4 was that: "[t]he process for claiming ICP tokens stands out, because 'Dfinity did not follow the playbook of other successful projects,' Arkham said. 'Instead, it *appears* they quietly allowed the treasury and insiders to send billions of dollars of ICP to exchanges, while making it extremely difficult for their longtime supporters to access the tokens they were promised.'"[36] Dfinity argues that this statement was defamatory because it "falsely accuse[d] Dfinity and its personnel of orchestrating a massive crypto scam."[37]

Dfinity is mistaken.  Statement 4 is a quotation from Arkham that provided Arkham's theory based on disclosed facts for what may have caused the substantial decline in the value of the ICP Token.  It is rebutted later in the same Article by statements from Dfinity and other "industry observers" that provided alternative explanations for the decline.[38]  Where, as here, a statement's quotation of a third-party's theory is both "qualified" and "followed by an alternative explanation," it is "clearly . . . one of opinion."[39]  Challenged Statement 4 is non-actionable opinion, and to the

---

[35] *See, e.g., Aronson v. Wiersma*, 65 N.Y.2d 592, 594 (1985) (the words at issue "cannot be made [actionable] by a strained or artificial construction").

[36] Compl. ¶ 35(d) (emphasis added).

[37] Dkt 78, at 14.

[38] Green Decl. Ex. A.

[39] *Levin v. McPhee*, 917 F. Supp. 230, 240 (S.D.N.Y. 1996), *aff'd*, 119 F.3d 189 (2d Cir. 1997).

extent it states any facts, Dfinity's Complaint and briefing show that the veracity of those facts are not substantively in dispute.[40]

Challenged Statement 5 was that: "Arkham identified 44 'probable insider addresses' that deposited 10 million ICP tokens worth more than $2 billion to exchanges after the initial coin offering, giving the impression they were transferred for trading, not safeguarding. These transfers coincided with significant drops in the price of ICP, the report said. Small investors, left out of the process, were stuck."[41]  Much of this statement is non-actionable opinion and simply reports the alleged findings contained in the Arkham Report.  Moreover, Dfinity's Complaint and other filings – even if accepted as true – would not establish the falsity of any facts contained in Statement 5.

Accordingly, none of the Challenged Statements attributed to the Times Defendants is actionable.[42]

2.     *Challenged Statements by the Arkham Defendants*

The average person hearing or reading the Challenged Statements in the Arkham Report and Video, assessing those statements in their context as a whole, would understand them to

---

[40]    *See* Dkt 86, at 5-6.

[41]    Compl. ¶ 35(e).

[42]    In all events, Dfinity's defamation claim would fail also because it has not alleged facts sufficient to establish actual malice.  Dfinity has not alleged any information available at the time of publication of the Article and then known to the *Times* Defendants that showed the Arkham Report or Video to be inherently untrustworthy.  *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989); *Palin*, 940 F.3d at 810; *see also Jaliman v. Selendy*, No. 12820/04, 2005 N.Y. Misc. LEXIS 3291, at *22 (N.Y. Sup. Ct. Westchester Cty. Mar. 7, 2005) ("Actual malice cannot be demonstrated by speculation, surmise, conjecture and suspicion . . . nor by mere conclusory or unsubstantiated allegations or assertions." (internal citations omitted) (collecting cases)).

reflect Arkham's opinions regarding the decline in value of the ICP Token based on its analysis of disclosed and publicly available sources.[43]   In substance, Dfinity challenges the inferences drawn from the facts cited in the Arkham Report, rather than the facts themselves.   Moreover, in addition to relying on inferences from disclosed facts, Arkham caveated its conclusions with cautionary language that would signal to a reasonable reader that Arkham was expressing opinion, not fact.[44]  Such statements routinely are held to be non-actionable opinion.[45]

Dfinity's defamation claim against the Arkham Defendants fails also because the Complaint lacks any plausible, non-conclusory factual allegations demonstrating that any of the allegedly defamatory statements was made with actual malice – *i.e.*, subjective awareness of probable falsity of the defamatory statement or reckless disregard for its truth or falsity.   In the Arkham Report and Video, the Arkham Defendants named their publicly available sources and included links to those sources throughout the Report.   The Complaint does not plausibly allege any facts suggesting that the Arkham Defendants had reason to doubt the accuracy of those public sources or that they

---

[43]  *See Hayashi*, 2019 WL 1409389, at *2 (quoting *Davis*, 24 N.Y.3d at 269).

[44]  *See, e.g., Cummins v. SunTrust Cap. Mkts., Inc.*, 416 F. App'x 101, 103–04 (2d Cir. 2011) (non-actionable opinion where "defendants included several disclaimers that they could not say whether the options were actually backdated or otherwise illegal"); *Weiner v. Doubleday & Co., Inc.*, 535 N.Y.S.2d 597, 602 (1st Dep't 1988) (non-actionable opinion where "[c]autionary passages [were] sprinkled throughout the book").

[45]  *See, e.g., Cummins v. Suntrust Capital Mkts., Inc.*, 649 F.Supp. 2d 224, 234–35 (S.D.N.Y. 2009) (protected expression of opinion where defendant issued report accusing executives of stock option abuses and stating that, "[a]t the end of the day, shareholders will have to decide whether this management team and its board of directors have fulfilled their fiduciary duty. We are currently hard pressed to reach such a conclusion"), *aff'd*, 416 Fed. Appx. 101 (2d Cir. 2011); *Biro*, 883 F. Supp. 2d at 468 (where defendant "fully set[] forth the factual basis for [its] view (and that factual basis is not challenged as false)," its "conclusion constitutes nonactionable opinion").

"actually entertained serious doubts about the veracity of the publication."[46] Further, the Complaint's allegations that the Report was funded by "wealthy elites who sought to personally profit from" it and that it was "created . . . only . . . to cause reputational and financial damage to Dfinity" are irrelevant to whether the Arkham Defendants had reason to doubt the accuracy of the Report.[47] Those allegations in any case are conclusory.

Accordingly, Dfinity's defamation claim against the Arkham Defendants is dismissed.

C.    *Unfair Business and Trade Practice Claim*

Dfinity alleges also that the Arkham Defendants violated N.Y. Gen. Bus. Law § 349, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]."[48]

To plead a legally sufficient claim under Section 349, "a plaintiff must allege that a defendant . . . engaged in (1) consumer-oriented conduct that [was] (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."[49]  Moreover, a plaintiff must allege plausibly that the challenged "acts or practices ha[d] a broader impact on

---

[46]
    *Herbert v. Lando*, 781 F.2d 298, 308 (2d Cir.), *cert. denied*, 476 U.S. 1182 (1986).

[47]
    Compl. ¶¶ 2–3.

[48]
    N.Y. Gen. Bus. Law § 349(a).

[49]
    *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir.2015) (internal quotation marks omitted).

consumers at large."[50] "The critical question . . . is whether the matter affects the public interest in New York, not whether the suit is brought by a consumer or a competitor."[51]

Here, the gravamen of the Complaint is not consumer injury or harm to the public interest, but rather an alleged particularized harm to plaintiff. Dfinity argues that the Arkham Report and Video (1) "directly harmed [its] reputation and business," (2) "caused the price of the ICP token to decline," and (3) injured consumers "because the publications deceived them."[52] The first two categories of alleged harm are injuries primarily to Dfinity, not to consumers. Moreover, the third category is of the "general variety of consumer confusion" that "the overwhelming majority of – if not all – federal courts to address the question" have found insufficient to state a Section 349 claim.[53]

Accordingly, because the gravamen of the Complaint is alleged harm to Dfinity, rather than consumer injury or harm to the public interest, Dfinity's Section 349 claim is dismissed.

## Conclusion

The Court has considered all of the arguments of the parties.[54] For the foregoing

---

[50]

    *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995); *see also Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir.1995) ("It is clear that the gravamen of the complaint must be consumer injury or harm to the public interest." (internal quotation marks omitted)).

[51]

    *Securitron Magnalock Corp.*, 65 F.3d at 264.

[52]

    Dkt 78, at 42–43.

[53]

    *See Mayes v. Summit Ent. Corp.*, 287 F. Supp. 3d 200, 208 (E.D.N.Y. 2018); *see also Gibson v. SCE Grp., Inc.*, 391 F. Supp. 3d 228, 251 (S.D.N.Y. 2019) (collecting cases).

[54]

    Messrs. Longo and Bennett each moves to dismiss the Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2). (Dkts 74, 82) As a general matter, personal jurisdiction

reasons, the motions of the Times Defendants, the Arkham Defendants, McNamara, and

Bennett to dismiss the complaint for failure to state a claim upon which relief may be granted (Dkts

50, 54, 63, 74, 82) all are granted and the case dismissed.  To the extent that certain defendants

moved also to dismiss for lack of personal jurisdiction, those motions are denied as moot in light of

the disposition of the case on other grounds.

> The Clerk shall close the case.

> SO ORDERED.

Dated:          November 13, 2023

_____
Lewis A. Kaplan
United States District Judge

---

is "a threshold question to be addressed prior to consideration of the merits of a claim." *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 498 n.6 (2d Cir. 2013).  A court may, however, "proceed[] directly to the merits on a motion to dismiss" where, as here, the case involves "multiple defendants–over some of whom the court indisputably has personal jurisdiction–in which all defendants collectively challenge the legal sufficiency of the plaintiff's cause of action." *Id.* (internal quotation marks omitted).  Further, proceeding to the merits "is particularly appropriate where . . . the personal jurisdictional challenges are based on factual allegations that are . . . still under development." *Id.* (internal quotation marks omitted).  In this case, plaintiff and Mr. Longo dispute factual allegations relevant to the Court's determination of its jurisdiction over Mr. Longo.  Accordingly, as the claims against Mr. Longo fail on the merits for the same reasons set forth above with respect to the other Arkham Defendants, further development of the factual allegations to resolve the jurisdictional issue is unwarranted.  Mr. Longo's Rule 12(b)(2) motion is moot.

Mr. Bennett's Rule 12(b)(2) motion is denied.  A defendant contesting personal jurisdiction must "show at least a colorable basis for challenging personal jurisdiction, and unsupported statements in a brief do not do that." *Parabit Sys.*, 2019 WL 13078616, at *1.  Here, Mr. Bennett has not filed any affidavits or other evidence in support of the assertions in his motion to dismiss.  Accordingly, he has failed properly to challenge personal jurisdiction.